**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **OY AJAT, LTD.,** | : | **Civil Action No.: 10-4875 (PGS)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **VATECH AMERICA, INC., et al,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**ARPERT, U.S.M.J.**

     This matter comes before the Court on a Motion by Defendant Vatech America, Inc. ("Defendant" or "VAI") to stay this case pending completion of the U.S. Patent and Trademark Office's ("USPTO") *inter partes* reexamination of the '763 and '022 patents ("patents-in-suit") [dkt. entry. no. 53], originally returnable July 5, 2011.  Separately, by letter dated January 12, 2012, Defendant has submitted an application for leave to serve supplemental Invalidity Contentions.  For the reasons stated herein, Defendant's Motion to stay and application to serve supplemental Invalidity Contentions are **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     On September 23, 2010, Plaintiff Oy Ajat, Ltd. ("Plaintiff") filed a Complaint against Defendants VAI, E-Woo Technology U.S.A., Inc. ("EWU"), Vatech Co., Ltd. ("VAK"), and E-Woo Technology Co., Ltd. ("EWK") (collectively, "Defendants") alleging infringement of U.S. Patent No. 7,336,763 ("'763 patent"), entitled "Dental Extra-Oral X-Ray Imaging System and Method", and U.S. Patent No. 7,676,022 ("'022 patent"), entitled "Extra-Oral Digital Panoramic Dental X-Ray Imaging System" (collectively, "patents-in-suit").  *See* Pl.'s Comp., dkt. entry no. 1 at 2-3, Exhs. A-

B.  On January 14, 2011, Defendant filed a motion to dismiss for failure to state a claim of induced infringement.  *See* dkt. entry no. 12.  On April 14, 2011, the Court granted Defendant's motion to dismiss with respect to induced infringement claims arising prior to the date of Plaintiff's Complaint but denied the motion with respect to induced infringement claims arising after Plaintiff served Defendant with the Complaint.  *See* dkt. entry no. 32 at 9.  Subsequently, on April 18, 2011, Defendants VAK and EWK filed a motion to dismiss for lack of personal jurisdiction.  *See* dkt. entry no. 33.  On January 17, 2012, the Court granted Defendants' motion to dismiss with respect to EWK but denied the motion with respect to VAK.  *See* dkt. entry no. 68.

On March 25, 2011, Defendant filed a request for *inter partes* reexamination of the '763 and '022 patents with the USPTO.  *See* Def.'s Decl. of Michael R. Annis, Esq. ("Annis"), dkt. entry no. 53-2, Exhs. D-E.  On April 29, 2011, the USPTO granted Defendant's requests for *inter partes* reexamination of the patents-in-suit.  *Id.* at Exh. A-B.  Specifically, the USPTO concluded that "a substantial new question of patentability affecting claims 1-29 of…United States Patent Number 7,336,763" and "claims 1-27 of…United States Patent Number 7,676,022…is raised by the request for *inter parte*[*s*] reexamination."  *Id.*  On June 10, 2011, Defendant filed the instant Motion to stay pending the USPTO's *inter partes* reexamination of the patents-in-suit.  *See* dkt. entry no. 53.  The Court administratively terminated the Motion, without prejudice to reinstatement, on January 5, 2012 pending disposition of Defendants' then pending motions to dismiss and for jurisdictional discovery.  *See* dkt. entry no. 65.  Upon the request of defense counsel, the Motion was reinstated on January 23, 2012 and made returnable on February 21, 2012.

On January 27, 2012, Defendant provided the Court with a factual update stating:

-all claims of the patents-in-suit stand rejected by the USPTO;

2

> -the parties have provided additional comments to the USPTO examiner;
> -discovery regarding VAK will now commence based upon the disposition of the motion to dismiss and VAK has until February 6, 2012 to provide answers and objections to requests for production and interrogatories;
> -the fact discovery deadline in this matter is May 25, 2012;
> -no depositions have been taken or scheduled;
> -no experts have been designated and expert discovery has not commenced;
> -the parties have submitted claim construction briefs but no *Markman* hearing has been scheduled; and
> -no trial date has been set.

*See* Def.'s Letter dated January 27, 2012 at 1-2.  On February 3, 2012, Plaintiff responded by providing the Court with its own factual update, stating:

> -on August 23 and 24, 2011, Plaintiff filed a written response with the USPTO in each of the pending *inter partes* reexaminations of the patents-in-suits;
> -on September 22 and 23, 2011, Defendant filed a written response with the USPTO in each of the pending *inter partes* reexaminations of the patents-in-suit;
> -since September 2011, no further action has been taken in the reexamination proceedings;
> -Defendant served non-infringement contentions and invalidity contentions and Plaintiff served responses to Defendant's invalidity contentions in this matter;
> -Defendant has produced additional discovery and Plaintiff has retained consulting experts;
> -the parties identified terms proposed for claim construction, exchanged preliminary claim constructions, filed a Joint Claim Construction and Prehearing Statement, and separate opening and responsive *Markman* briefs;
> -the parties submitted a joint letter regarding a *Markman* hearing; and
> -the Court decided or otherwise resolved Defendants VAK and EWK's motion to dismiss and Plaintiff's motion for jurisdictional discovery.

*See* Pl.'s Letter dated February 3, 2012, dkt. entry no. 72 at 1-3.

On March 2, 2012, Plaintiff submitted a supplemental brief and update indicating that the

3

USPTO had issued an Action Closing Prosecution ("ACP") with respect to the '022 and '763 patents. *See* Pl.'s Letter dated March 2, 2012 at 1. Plaintiff maintains that the USPTO "confirm[ed] the patentability of each asserted and unamended claim" in the '022 patent and "explained why none of the references submitted by [Defendant]...renders the asserted '022 patent claims unpatentable". *Id*. Similarly, Plaintiff maintains that the USPTO "confirm[ed] the patentability of one of the asserted and unamended claims" in the '763 patent and "explained why none of the references submitted by [Defendant]...renders the claims unpatentable". *Id*. Plaintiff asserts that because the USPTO "has confirmed asserted claims as patentable in the ACPs, there is an even higher probability that these claims will survive reexamination without amendment" and therefore prejudice will accrue to Plaintiff if the case is stayed. *Id*. at 2.

On March 9, 2012, Defendant responded by providing its own supplemental brief and update indicating that the "impact [of the] recent interim orders from the [USPTO] with respect to the reexaminations of the patents-in-suit...is none" because "the salient facts and rationale to stay this litigation as urged in [Defendant's] original motion remain fundamentally unchanged". *See* Def.'s Letter dated March 9, 2012 at 1. Defendant maintains that although the USPTO has "confirmed certain of the claims of the patents-in-suit", it has in fact "rejected two-thirds of the claims at issue here...[while] confirming only three...". *Id*. Further, Defendant notes that the "[US]PTO proceedings are not yet final" given that after the comment period concludes, "the assigned examiner will have an opportunity to reassess his ultimate conclusions...and the parties will have the option of taking the reexamination to another level of review". *Id*. at 2. Defendant asserts that "it would not be judicially economical to burden the Court and the parties with continued litigation before the reexamination proceedings are fully and finally concluded". *Id*.

Separately, in a letter dated January 12, 2012, Defendant submitted an application seeking leave to serve supplemental Invalidity Contentions.  *See* Def.'s Letter dated January 12, 2012. Defendant served its original Invalidity Contentions on July 20, 2011, therein citing "the same prior art relied upon by the [US]PTO in cancelling the patents-in-suit".  *Id*. at 2.  Defendant maintains that Plaintiff "responded to the [US]PTO examiner's rejection of the patents-in-suit" on August 23 and 24, 2011 by "argu[ing] for the first time...[about] the meaning of certain claim limitations in the patents-in-suit".  *Id*.  As a result, Defendant claims that it "presented the [USPTO] examiner with two additional prior art references that it contends invalidate...[the] patents-in-suit".  *Id*.  Further, on September 24, 2011, Defendant "filed additional third-party comments with the [US]PTO as part of the reexamination proceedings...[and simultaneously] provided copies of this prior art to [Plaintiff's]...counsel".  *Id*.  Defendant seeks leave to include these two (2) additional prior art references in this lawsuit by serving supplemental Invalidity Contentions.  *Id*. at 2-3.  Plaintiff filed opposition to this application on January 18, 2012 and Defendant replied on February 3, 2012.

## II.   ARGUMENT

### A.   Defendant's Motion to Stay

#### 1.   Defendant's Argument in Support of the Motion to Stay

Initially, citing 1679, 96 Cong., 1 Sess. § 310 (1979), H.R. 5075, 96 Cong., 1 Sess. § 310 (1979), and S.R. 446, 96 Cong., 2d Sess. § 310 (1980), Defendant maintains that "Congress intended the courts [to] defer to the reexamination process...and [that] early versions of the reexamination statute expressly provided for a stay of court proceedings during reexamination".  *See* Def.'s Br., dkt. entry no. 53-1 at 8.  Citing *ASCII Corp. v. Std. Entm't USA*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994), Defendant contends that in order to be "consistent with...Congress's intent, district courts

have adopted a 'liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings'". *Id.* at 9.   Pursuant to 35 U.S.C. § 314, Defendant notes that "an *inter partes* reexamination, in contrast to an *ex parte* reexamination, provides a third-party the right to participate in the reexamination process". *Id.*  Citing 35 U.S.C. § 315 and *Tomco 2 Equip. Co. v. Southeastern Agri-Systems, Inc.*, 542 F. Supp. 2d 1303, 1306 (N.D. GA. 2008), Defendant argues that "the results of the reexamination are…binding upon the third party requester in any subsequent or concurrent civil action". *Id.*  As such, Defendant contends that "Congress created the *inter partes* review to provide an alternative method of resolving disputes...using the expertise of the USPTO". *Id.* at 10; *see also Tomco 2*, 542 F. Supp. 2d at 1306-07.

Citing *Eberle v. Harris*, 2005 WL 6192865, at *2 (D.N.J. 2005) and *ICI Uniqema, Inc. v. Kobo Prod., Inc.*, 2009 WL 4034829, at *1 (D.N.J. 2009), Defendant states that there are multiple benefits of staying actions pending reexamination, including:

> [1] all prior art presented to the court will have been first considered by the USPTO with its particular expertise; [2] discovery problems relating to prior art can be eliminated by the USPTO reexamination; [3] in cases resulting in effective invalidity of the patent-in-suit, the suit will likely be dismissed; [4] the outcome of the reexamination may encourage a settlement without the further use of the Court; [5] the record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation; [6] the issues, defenses, and evidence will more easily be limited after reexamination; and [7] the costs will likely be reduced both for the parties and the Court.

*Id.* at 10-11.  Further, Defendant acknowledges that pursuant to *Brass Smith, LLC v. RPI Indus., Inc.*, 2010 WL 4444717, at *6 (D.N.J. 2010), when deciding whether to stay a matter pending reexamination, "courts typically consider: (1) [w]hether discovery is completed and whether a trial

date has been set; (2) [w]hether a stay will simplify the issues in question and trial of the case; and (3) [w]hether a stay will unduly prejudice or present a clear tactical advantage to the non-moving party". *Id.* at 11.

> **(a)     Because this lawsuit is in its initial stages, the Court should stay this matter pending reexamination of the patents-in-suit.**

Citing *CCP Sys. AG v. Samsung Elec. Corp., Ltd.*, 2010 WL 5080570, at *4 (D.N.J. 2010), *Brass Smith, LLC*, 2010 WL 4444717, at *6, *ICI Uniqema, Inc.*, 2009 WL 4034829, at *2, and *Manometrics, Inc. v. Nova Measuring Instruments, Ltd.*, 2007 WL 627920, at *2 (N.D. Cal. 2007), Defendant maintains that because no trial date has been set, discovery is still in its preliminary stages, and "significant work remains to be completed by all parties and the Court before trial", a stay is appropriate and will likely narrow and clarify the issues for trial. *Id.* at 13-14.  Noting that "[a]ll claims of the [p]atents-in-[s]uit have now been rejected by the [US]PTO in its first office action", Defendant also argues that the USPTO proceedings are much further along than the litigation in this Court and that this justifies a stay. *See* Def.'s Reply Br., dkt. entry no. 58 at 7, n.3.

> **(b)     A stay of this matter will reduce and simplify the issues for trial.**

Citing *Eberle*, 2005 WL 6192865, at *3, Defendant argues that "in patent cases involving reexamination of the patents-in-suit…, absent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary...and…courts will likely waste time examining the validity of claims which are modified or eliminated altogether during reexamination[,]…particularly where the USPTO has acknowledged that the cited prior art raises 'substantial new questions of patentability' as to all of the claims of the [p]atents-in-[s]uit". *See* Def.'s Br. at 14.  Defendant argues that "waiting until after reexaminations have been completed will

provide the Court with the expertise of the USPTO as to [the] claim scope, validity[,] and…construction" when making its own interpretation of the claim terms. *Id.* Citing 35 U.S.C. §§ 314(b)(2) and 315(c), *Tomco 2*, 542 F. Supp. 2d at 1309, and *Brass Smith, LLC*, 2010 WL 4444717, at *5, Defendant notes that "*[i]nter partes* [r]eexamination has certain estoppel effects against the litigants" and, therefore, "the dynamics of the litigation in issue will potentially alter, and with that alteration, the needs of the parties, the discovery they seek, the witnesses they will name, [and] perhaps even the very basis for the litigation will change". *Id.* at 15-16. Defendant also notes that on June 23 and June 24, 2011, after a "detailed and extensive analysis of both [p]atents", the USPTO rejected all claims of the patents-in-suit and found them to be invalid under 35 U.S.C. § 102(b) and 103(a). *See* Def.'s Reply Br. at 1-2. Citing Donald Hill, Jr., 78 Pat. Trademark & Copyright J. (BNA) 132 (May 29, 2009), Defendant notes that "when [an] initial Office Action rejects all claims – as it did in this case – all claims remain rejected in 83% of *inter partes* reexaminations", thus making the probability high that a trial in this matter will be unnecessary. *Id.* at 1, 3-4. Citing *LMT Mercer Group, Inc. v. Maine Ornamental, LLC*, 2011 WL 2039064 (D.N.J. 2011), Defendant argues that "the fact that the reexamination will likely end this litigation altogether strongly favors a stay". *Id*. at 4. Further, noting that "12% of patents subject to reexamination proceedings survive completely intact", Defendant argues that even if certain claims survive reexamination, they are likely to be amended and therefore a stay is appropriate. *Id.* at 5.

### (c)    A stay will preserve judicial resources.

Citing *GPAC Inc. v. DWW Enterprises, Inc.*, 144 F.R.D. 60, 62 (D.N.J. 1992), *Eberle*, 2005 WL 6192865, at *2, *ASCII Corp.*, 844 F. Supp. at 1381, *Gould v. Laser Control Corp.*, 705 F.2d 1340 (Fed. Cir. 1983), and *EchoStar Tech. Corp. v. TiVo, Inc.*, 2006 WL 2501494, at *2 (E.D. Tex.

2006), Defendant argues that because "reexamination may result in the elimination of most, if not all, of the issues in the pending litigation", a stay is an appropriate means to achieve efficiency and preserve judicial resources.  *See* Def.'s Br. at 16-18.

**(d)**     **Plaintiff will not be prejudiced or disadvantaged by a stay.**

Citing *Brass Smith, LLC,* 2010 WL 4444717, at *4, Defendant argues that although reexamination takes time, "it is well established that the inherent delay caused by reexamination is insufficient to establish undue prejudice to a patent holder". *Id.* at 18.  Defendant also argues that the following "affirmative indications" show that Plaintiff will not be prejudiced by a stay:

> [1] [Plaintiff] did not seek a preliminary injunction to address the alleged infringement of any of the named defendants in this action…[;] [2] [Plaintiff] has not shown that it is in a hurry to adjudicate its claims of infringement [because,] although [Plaintiff] filed this action in November 2010, [it] did not seek to secure service of process on any of the named defendants until late December…[;] [3] [Plaintiff] did not secure service of process over [VAK] and [EWK] until March 23, 2011…[both of which] challenged this Court's *in personam* jurisdiction…[;] [4] [Plaintiff] took… [approximately five (5) weeks] to provide its response to these motions to dismiss…[;] [and] [5] [i]t was not until [Plaintiff] filed its opposition to the motion to dismiss that [it] first requested jurisdictional discovery.

*Id.* at 18-19.  Citing *LMT Mercer Group, Inc.*, 2011 WL 2039064, at *12, Defendant argues that Plaintiff's failure to file suit until nearly a year after it allegedly "first investigated [Defendant's] PaX-Primo [dental x-ray imaging systems] in December 2009" and Plaintiff's failure to "seek preliminary injunctive relief" both mean that Plaintiff "will suffer no prejudice by [a] stay". *See* Def.'s Reply Br. at 8.  Citing *Data Treasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006), Defendant contends that because Plaintiff is seeking what "amounts to a licensing fee, [it] has an adequate and easily quantifiable legal remedy despite [any] delay…caused by [a

9

stay]" such that "[m]oney damages will adequately compensate [Plaintiff]". *See* Def.'s Br. at 19.

Finally, Defendant argues that because Plaintiff's "sole request for relief is predicated on the alleged

infringement of the [p]atents-in-suit[,] [a]ll claims at issue…are dependent upon [their] validity" such

that "a stay of these proceedings will not delay or put on hold any claims by [Plaintiff] against

[Defendant] or the other named defendants". *Id.* at 19-20.

## 2.   <u>Plaintiff's Argument in Opposition to the Motion to Stay</u>

Plaintiff contends that "[Defendant's] [m]otion for a [s]tay is…[an] attempt to introduce

protracted and unwarranted delay in order to prevent a ruling that [Defendant] is willfully infringing

[Plaintiff's] patents-in-suit". *See* Pl.'s Opp'n. Br., dkt. entry no. 55 at 1.  To support this claim,

Plaintiff notes that "[o]n March 23, 2010, [Defendant was] notified…in writing of probable

infringement of the patents-in-suit", to which it "replied on April 13, 2010 [by] stating that [it] had

reviewed [Plaintiff's] patent rights and concluded that there was no infringement". *Id.*  Plaintiff

further notes that "[o]n September 27, 2010, four days after filing its Complaint, [Plaintiff] wrote

to each President of the group of four defendant companies…to seek a business settlement to the

dispute" and informed Defendant "that if no response was received by November 30, 2010[,] the

Complaint would be served". *Id.*  Plaintiff argues that it was not until November 28, 2010 that

Defendant responded, informing Plaintiff that it deemed the patents-in-suit unpatentable and that it

intended to file a request for reexamination by the USPTO when Plaintiff initiated service of the

Complaint. *Id.* at 2.  As such, Plaintiff argues that Defendant "admitted [to] having formed a basis

for alleging invalidity at least as early as April 13, 2010" but "postponed filing its reexamination

requests until March 25, 2011…and further delayed filing its motion to stay until June 10, 2011",

"more than eight months from the date of [the] Complaint and almost three months [after] filing the

10

reexamination requests".  *Id*. at 2-3.

Citing *Affinity Labs of Texas, LLC v. Nike, Inc*., 2011 U.S. Dist. LEXIS 51665, at *6-7 (N.D. Cal. 2011) and *Mike's Train House, Inc. v. Broadway Ltd. Imports*, 2011 U.S. Dist. LEXIS 22224, at *11 (D. Md. 2011), Plaintiff argues that "[t]hose delays alone are sufficient grounds to deny [Defendant's] motion to stay".  *Id*. at 3.  Plaintiff also argues that Defendant has demonstrated a "pattern of unwarranted delay" and has made "repeated efforts to prevent this action from proceeding to trial", including:

> (1) refusal to accept service of the Complaint despite the fact that [Plaintiff] had already provided both Korean defendants with courtesy copies of the Complaint and the patents-in-suit…; (2) filing a motion to dismiss claims of induced infringement based in part on [Defendant's] purported lack of notice prior to service of the Complaint…despite the fact that [Plaintiff] delivered a courtesy copy of the Complaint to [Defendant] more than two months prior to service; (3) filing a motion to dismiss the Korean defendants for lack of jurisdiction…; [(4)] stonewalling initial discovery by (a) refusing to make the infringing devices available for inspection…[,] (b) refusing to produce documents relating to the accused Pax Primo x-ray devices, including source code, based solely on an objection of confidentiality (despite the existence of the Court's Discovery Confidentiality Order in this case)[,] (c) refusing most document discovery[,] and (d) limiting interrogatory answers.

*Id*. at 4-5.

Plaintiff next contends that "[EWU], the other U.S. entity named in this case, has been served but has not answered the Complaint and is in default".  *Id*. at 5.  Although Defendant contends that the two U.S. companies are the same company, Plaintiff refutes this, noting that "[EWU], has a separate corporate charter and registration".  *Id*.  Plaintiff also argues that "[Defendant] has not provided discovery describing the corporate status and ties concerning the four indisputably interrelated defendant entities, and particularly has not provided any representations as to the status

11

of [the] Vatech Group of companies during the relevant period of alleged infringement".  *Id.*
Plaintiff notes that "[VAK] maintains local telephone numbers and employees, including
management, sales and technical personnel, in [its] New Jersey offices…[and] that [VAK]
designates [VAI] as its Branch Office in New Jersey".  *Id.* at 6.  Moreover, Plaintiff argues that this
information was "withheld from the Court" when the Korean defendants made their motions to
dismiss for lack of personal jurisdiction, which was supported by [Defendant's] sworn declaration".
*Id.*

> **(a)**     **Defendant's tactical and dilatory delays warrant an outright denial of a stay in this action.**

Citing *Mike's Train House*, 2011 U.S. Dist. LEXIS 22224, at *11, *LG Electronics U.S.A. Inc.
v. Whirlpool Corp.*, 2011 U.S. Dist. LEXIS 11488, at *3 (D.N.J. 2011), *Innovative Office Products,
Inc. v. Spaceco, Inc.*, 2008 U.S. Dist. LEXIS 67500, at *11-12 (E.D. Pa. 2008), and *Xerox Corp. v.
3COM Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999), Plaintiff argues that although a
reexamination of the patents-in-suit has been requested, "[Defendant's] demonstrated pattern of
arbitrary and unwarranted delay…evidences a tactical and dilatory motive which itself is sufficient
grounds for denying a stay in this case".  *Id.* at 6-7.

> **(b)**     **All other relevant factors also favor denying the requested stay.**

Citing *Wyeth v. Abbott Labs*, 2011 U.S. Dist. LEXIS 9824, at *3 (D.N.J. 2011) and *Ethicon
v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988), Plaintiff notes that "[t]he decision whether to
stay a patent case in which reexamination by the [USPTO] has been requested is within the sound
discretion of the district court".  *Id.* at 7.  However, citing *LMT Mercer Group, Inc. v. Maine
Ornamental, LLC*, 2011 U.S. Dist. LEXIS 55549, at *28-9 (D.N.J. 2011) and *Gold v. Johns-Manville*

*Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983), Plaintiff argues that "it is well settled that before a stay may be issued, the petitioner must demonstrate a clear case of hardship or inequity...if there is even a fair possibility that the stay would work damage on the other party" and that "[l]itigation and reexamination are not mutually exclusive…[such that] the two proceedings may properly proceed in parallel". *Id.* at 7-8.

> I.    **Defendant's tactical and dilatory delays, including its belated motion for a stay if granted, unduly prejudice Plaintiff.**

Citing *Affinity Labs* and referencing the alleged delays discussed above, Plaintiff argues that "[c]ourts have denied motions to stay based solely on similar delays...even where the remaining 'factors' were neutral or slightly favored a stay". *Id.* at 8-9.  Plaintiff maintains that "the undue prejudice and tactical disadvantage to [Plaintiff] resulting from further delay[s] [in] this action…weigh heavily against a stay". *Id.* at 9.  Citing *LG Electronics*, 2011 U.S. Dist. LEXIS 11488, at * 4, Plaintiff contends that "[Plaintiff] and [Defendant] are direct competitors in the niche field of extra-oral digital x-ray technology" and therefore "a stay would likely prejudice the non-movant". *Id.*

> ii.    **Defendant's motion, if granted, will delay trial by significantly more time than it would take to actually try this case.**

Plaintiff argues that "[a] stay in this case would further delay trial by at least three years and[,] more likely[,] more than six years". *Id.*  Referencing Defendant's moving brief (*see* dkt. entry no. 53-8, Ex. F), Plaintiff notes that "for all *inter partes* reexaminations conducted since...1999..., the average time from filing a request to the USPTO's issuance of a reexamination certificate is 36.5 months". *Id.* at 10.  Citing *Wyeth*, 2011 U.S. Dist. LEXIS 9824, at * 4-5 and *Mike's Train House*,

2011 U.S. Dist. LEXIS 22224, at *9, Plaintiff argues that the reexamination process, including appeals, could take over six years and that such a delay "would unduly prejudice and disadvantage [Plaintiff's] opportunity to meet its burden on infringement and willfulness when witnesses may have relocated, memories will have faded and documents could have been lost". *Id.* Plaintiff also argues that it is not "merely seeking what amounts to a licensing fee", but rather has "explicitly [asked] the Court for a permanent injunction prohibiting [Defendant's] further infringement of the patents-in-suit". *Id.* Citing *APP Pharm., LLC v. Ameridose, LLC*, 2011 U.S. Dist. LEXIS 23318, at *3 (D.N.J. 2011), Plaintiff argues that "the obvious harm to [Plaintiff] and its status as a viable market competitor by postponing [the] injunction by six years or more would be irreparable". *Id.* at 10-11. Plaintiff also contends that a stay would be harmful to "third party…dental practitioners who use infringing x-ray machines purchased from [Defendant]…to the extent that it would needlessly prolong the time during which the legitimacy of their use of that equipment would remain unresolved". *Id.* at 11.

> iv. **It is improbable that a stay in this case would simplify the issues.**

Referencing Defendant's moving brief (*see* dkt. entry no. 53-8, Ex. F), Plaintiff contends that "for all of the 253 *inter partes* reexamination certificates issued from 1999 through March 31, 2011, less than half, [or] only 45%, resulted in cancellation or disclaimer of all claims" and therefore "reexamination of the patents-in-suit are more likely to conclude with asserted claims being confirmed patentable". *Id.* at 11-12. Further, citing *Wyeth*, 2011 U.S. Dist. LEXIS 9824, at *8, Plaintiff argues that when "[v]iewing more current statistics, this Court has observed that the cancellation rate in reexaminations has decreased to 24%", thus "increasing the likelihood that

14

reexamination will conclude with asserted claims confirmed as patentable" and "thereby [minimizing] any possibility that the issues in this case will be rendered moot". *Id.* at 12. Plaintiff claims that "if the USPTO confirms asserted claims to be patentable, then pursuant to 35 U.S.C. § 315(c)[,] [Defendant] should be estopped from asserting the same invalidity challenge in this case". *Id*. "[T]o the extent…the remaining defendants might not be subject to [the] same estoppel [as Defendant,]…35 U.S.C. § 317(b) provides that a district court's final decision against a party on that party's invalidity claim precludes that party and its privies from raising or maintaining the same issues in an *inter partes* reexamination". *Id.* As such, "permitting this action to proceed to trial…could relieve the USPTO from expending further resources on the reexaminations in the event that the Court decides against [Defendant's] invalidity claim". *Id.* at 12-13.

### v.   The extent of resources and expense already expended in this case also favors denial of a stay.

Due to Defendants' extensive motion practice, Plaintiff contends that this case has "already…imposed substantial...costs". *Id.* at 13. Plaintiff notes that it has already "served its Infringement Contentions and other disclosures pursuant to L. PAT. R. 3.1 and served over one-thousand documents pursuant to L. PAT. R. 3.2", that "Defendant['s] Non-Infringement Contentions, Invalidity Contentions and accompanying document productions pursuant to L. PAT. R. 3.2A, 3.3 and 3.4" have been served, and that "[t]he Court has set deadlines for all pretrial matters through and beyond the completion of the claim construction process". *Id.* at 13-14. Plaintiff maintains that "[i]n this case, the stage of the litigation coupled with the extensive briefing already submitted in connection with [Defendants'] multiple motions and the existence of a set pretrial schedule favors denial of the requested stay". *Id.* at 14-15. Finally, citing *LMT Mercer Group, Inc.*, 2011 WL

2039064, at *28-29, Plaintiff argues that "[Defendant] failed to demonstrate any hardship or inequity [that] it would incur absent a stay, much less the 'clear case of hardship or inequity' it was required to show", and that this deficiency weighs against a stay. *Id.* at 15.

### 3.    Defendant's Counter-Argument to Plaintiff's Opposition

In response to Plaintiff's opposition, Defendant argues that "[Plaintiff] does not practice the [p]atents-in-[s]uit" and "is apparently unsure whether any other entity practices (or marks) the patents-in-suit". *See* Def.'s Reply Br. at 8-9. Citing *LMT Mercer*, 2011 WL 2039064, at *12, Defendant contends that Plaintiff has "no basis to argue that it even competes in the same market" and that "an unsubstantiated claim that a party is a 'direct competitor' is insufficient to support a claim of prejudice based on hypothetical changes in the market". *Id.* at 9.

As to Plaintiff's accusations that Defendant has caused delay and prevented this case from moving forward, Defendant cites *LMT Mercer*, 2011 WL 2039064, at *12, *ICI Uniqema*, 2009 WL 4034829, at *2, *Stryker Trauma S.A. v. Synthes*, 2008 WL 877848, at *2 (D.N.J. 2008), and *GPAC*, 144 F.R.D. at 60-66 and argues that "the law in this District is absolutely clear: delay is not prejudice". *Id.* at 9-10. Although Defendant maintains that Plaintiff's arguments of delay are irrelevant, it still specifically rejects any such claims. *Id.* at 10. Defendant argues that it "did not delay filing the reexamination requests by a year". *Id.* Rather, "[i]n April 2010, an attorney for [VAK] stated that [VAK] did not infringe the patent because it did not make, use or sell the PaX-Primo in the United States [and] there is no indication that [VAK], let alone [Defendant], had done a prior art search or prepared the 220 pages of analysis constituting the reexamination requests". *Id.* With regard to allegations of service of process delays, Defendant argues that "[t]he Korean entities did not authorize its U.S. counsel [to act] as an agent to accept service of process[;] ...[however,

16

they] did agree to waive service under Rule 4 of the Federal Rules of Civil Procedure", a proposition which Plaintiff rejected. *Id.* Further, Defendant argues that its motion to dismiss was "directed to Plaintiff's improper pleading under *Iqbal*…[and] [Plaintiff's] failure to appropriately plead necessary facts in its Complaint and was not 'delay' by [Defendant]". *Id.* at 11. Similarly, Defendant argues that it has a constitutional right to file a motion to dismiss for lack of personal jurisdiction and that asserting this right does not constitute delay. *Id.* Citing 37 C.F.R. § 1.956, Defendant argues that concerns for future delay "pending the reexamination proceedings [are] mitigated by the [US]PTO's duty to conduct *inter partes* reexamination proceedings 'with special dispatch'". *Id.* at 12. Citing USPTO Proceedings, p.2 at www.uspto.gov/web/patents/documents/term_reexam_proceed.doc, Defendant notes that "[t]he [US]PTO has expressed its policy that if litigation has been stayed for the purpose of reexamination,…[it] will expedite the proceedings by taking the case up for action at the earliest possible time, setting shorter response times, and permitting extensions of time only upon a strong showing of sufficient cause". *Id.*

With regard to Plaintiff's allegations that Defendant has "stonewalled" discovery, Defendant contends that it "agreed to an inspection of the PaX-Primo subject to an appropriate protocol…[and] [d]espite Plaintiff's failure to follow the requirements of Rule 34, [Defendant] has offered to formulate a proposed protocol". *Id.* at 11. Defendant also contends that it "never withheld any documents or information on the basis of confidentiality…[but rather] lodged…objections to preserve its right to mark documents subject to the Discovery Confidentiality Order". *Id.* Defendant notes that it "agreed to produce source code...and [to] obtain such code from the manufacturer if necessary", denying "Plaintiff's suggestion that [Defendant] has refused most document discovery and limited [its] interrogatory answers". *Id.* Finally, Defendant argues that it "has made Plaintiff

17

aware [that] [EWU], a New Jersey Corporation, changed its name to [VAI] and recorded the name change with [the] New Jersey Director of Revenue in November of 2010". *Id.* at 11-12. Given the above factors, Defendant argues that any "perceived delay" is attributable to Plaintiff and not Defendant. *Id.* at 12-13.

**B.      Defendant's Application to Serve Supplemental Invalidity Contentions**

**1.      Defendant's Argument in Support of the Application to Serve Supplemental Invalidity Contentions**

Citing L. PAT. R. 3.7, Defendant "seeks leave to supplement its original Invalidity Contentions" with "additional prior art references that it contends invalidate [Plaintiff's] patents-in-suit" – specifically, "U.S. Patent No. 5,744,806 to Frojd" and "Japanese Pub. No. 2000-217810 to Rika". *See* Def.'s Letter dated January 12, 2012 at 2. Defendant maintains that "the two new prior art references cited in [its] proposed supplemental contentions became truly material...to the issue of invalidity of the patents-in-suit...[for the first time] on August 23, 2011 when [Plaintiff]...made arguments in [the] reexamination proceedings to avoid invalidity findings by the assigned examiner". *See* Def.'s Reply Letter dated February 3, 2012 at 1. On September 22, 2011, Defendant "addressed [Plaintiff's] new argument by identifying the previously uncited prior art" and asserting that Plaintiff's "arguments to avoid the reexaminer's finding of invalidity were unavailing". *Id.* at 1-2. Defendant notes that it provided its "proposed supplemental Invalidity Contentions...to [Plaintiff] on December 22, 2011", together with "citations to *KSR International Co. v. Teleflex Inc.*, et al., 550 U.S. 398, 415-16 (2007)", and asserts that the "supplemental contentions specifically reference and provide copies of the prior art referenced above that only first became relevant after the submission of [Defendant's original] Invalidity Contentions". *See* Def.'s Letter dated January 12, 2012 at 2.

18

Further, Defendant argues that it is "in the interests of justice that the lawsuit and reexamination proceeding have at issue the same prior art and arguments regarding invalidity of the patents-in-suit". *Id.* "Plaintiff has been in receipt of these references, arguments and claim charts for several months and cannot be prejudiced by this supplementation" nor should this supplementation "impact the claims construction briefing or hearing schedule". *Id.* Based upon the history of this case together with the arguments advanced here, Defendant maintains that it "has provided good cause to allow supplementation of its invalidity contentions". *Id.* at 2-3.

> **(a)   Good cause exists to allow Defendant's requested supplementation.**

Citing *Int'l Dev., LLC v. Simon Nicholas Richmond and Adventive Ideas, LLC*, 2010 WL 3946714, at *3 (D.N.J. 2010), Defendant contends that there are "four factors to address regarding 'good cause' for amending Invalidity Contentions: (1) the reason for the delay and whether a party has been diligent; (2) the importance of what is to be excluded; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings". *See* Def.'s Reply Letter dated February 3, 2012 at 3. Defendant claims that "the potential materiality of the prior art references...[that it] seeks to add...[was] not...manifested until after original Invalidity Contentions...[were] served on [Plaintiff]" and, therefore, "any 'delay' in identifying the references was caused by Plaintiff's recent arguments made during reexamination". *Id*. "Although [Defendant] believes that the references cited in its original Invalidity Contentions prove that the asserted claims in this suit are invalid, [Plaintiff] is likely to make similar arguments in this suit to those raised for the first time on August 23, 2011 in the reexamination proceedings" such that "[i]f the Court denies [Defendant's] present request and construes the subject limitations as requested by [Plaintiff],

otherwise invalidating prior art may not be before the Court". *Id*. Defendant argues that Plaintiff "cannot be prejudiced by the requested supplementation" because "Defendant provided [Plaintiff] with everything required under the Local Patent Rules for Invalidity Contentions" on September 22, 2011 in response to Plaintiff's new arguments in the reexamination proceedings. *Id*. Rather, citing *Bettcher Indus. v. Bunzl USA*, 661 F.3d 629, 649 (Fed. Cir. 2011) and *LMT Mercer Group, Inc. v. Maine Ornamental, LLC*, 2011 WL 2039064, at *2 (D.N.J. 2011), Defendant asserts that "it would be manifestly unjust to have two separate proceedings address validity of the same patents where the same prior art was not considered by their triers of fact" because it would leave "the possibility of [an] inconsistent decision on validity". *Id*. at 3-4. "[W]hatever estoppel effect might be afforded under 35 U.S.C. § 315(c) cannot take effect as a matter of law until the [US]PTO proceedings reach their conclusion" such that Defendant's "request to supplement its Invalidity Contentions may become moot (either based on the estoppel provision or the [US]PTO's final confirmation of its first Office Action cancelling all claims of the patents-in-suit)" only "if this suit is stayed pending reexamination". *Id*.

### (b)    Defendant has been diligent in seeking supplementation.

Citing *Int'l Dev., LLC*, 2010 WL 3946714, at *2 and *Mondis Tech., Ltd. v. LG Elec., Inc.*, 2011 WL 2149925, at *3 (E.D. Tex. 2011), Defendant contends that "[d]iligence...is not a draconian requirement of perfection and clairvoyance" and "does not require that parties perfectly anticipate novel arguments, theories, or newly discovered evidence". *Id*. at 4. Defendant maintains that "[t]he depth and detail of the reexamination request alone illustrate[s]...[its] diligence in searching and analyzing prior art" and that it "was not a lack of diligence that led to...[Defendant's] request to supplement" but, rather, Plaintiff's "arguments in reexamination to overcome the examiner's

rejection of the claims based upon [Defendant's] cited prior art" which was a "new argument" developed by Plaintiff "after the time for [Defendant's] Invalidity Contentions had passed". *Id*. "[W]ithin 30 days of [Plaintiff's] novel interpretation", Defendant notes that it "submitted supplemental comments in the reexamination proceeding including copies of the now material prior art..., narrative descriptions of its arguments, and detailed claim charts" and that all of this material "was served on [Plaintiff's]...counsel...in late September [2011]". *Id*. at 4-5. Defendant argues that "[s]tanding alone, this disclosure itself would be sufficient to satisfy...[the requirements] of L. Pat. R. 3.7". *Id*. at 5. On December 22, 2011, "while in the midst of briefing claim construction, ...[Defendant] sought [Plaintiff's] consent to formally move the Court for an order allowing supplementation of [its] Invalidity Contentions to incorporate the prior art, arguments, and claim charts previously provided to [Plaintiff]". *Id*. Citing *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 2010 WL 1839326, at *5 (D. Minn. 2010), Defendant argues that "[e]ven if...[it] could have sought leave of Court earlier, this is not a reason to deny supplementation at this time – particularly when the litigation will not be negatively impacted...and the opposing party has not (and cannot) assert prejudice". *Id*.

>    **2.    Plaintiff's Argument in Opposition to the Application to Serve Supplemental Invalidity Contentions**

>>    **(a)    Defendant's lengthy delay in amending its contentions is inexcusable.**

Plaintiff notes that although the time to serve Invalidity Contentions expired on July 20, 2011, Defendant waited until "the last possible date" to serve its contentions despite "admitt[ing]...[that it] formed its invalidity opinion as early as April 13, 2010". *See* Pl.'s Letter dated January 18, 2012 at 1-2. "Thus, [Defendant] had well over a year from the time it formed its

invalidity opinion in which to solidify and articulate its Invalidity Contentions" and it "also had nearly ten months from when the Complaint was filed, nearly eight months from when the Complaint was served, and nearly four months from when it wrote its invalidity opinion at length and in detail in its requests for reexamination of both patents-in-suit". *Id.* Plaintiff maintains that Defendant "had more than ample opportunity to complete and serve its Invalidity Contentions by the July 20, 2011 deadline" such that "[i]ts proposed supplement to those contentions represents nothing more than its still-evolving theory of invalidity". *Id.* Further, Plaintiff contends that applicable local rules regarding Invalidity Contentions "are negated if a party's contentions are open ended". *Id.*

Plaintiff argues that "by the time it filed its reexamination requests on March 25, 2011...[,] [Defendant] had fully developed its invalidity theories" given that its "request for reexamination of the '763 patent included more than 100 pages of argument and more than 130 pages of claim charts asserting eight different references" and given that its "request for reexamination of the '022 patent was even longer". *Id.* at 2. Plaintiff notes that the "two documents which [Defendant] identifies in its letter were available to [Defendant] long before its Invalidity Contentions were due" given that "U.S. Patent No. 5,744,806...was published in 1998" and "Japanese Patent Publication No. 2000-217810...was published in 2000" and given the fact that Defendant "does not dispute...that it knew of those references when it served its contentions in July 2011". *Id.* "Even if [Defendant] discovered these references only after its Invalidity Contentions were due, they were publicly available". *Id.*

Further, Plaintiff argues that Defendant's "contention...that these additional references 'only first became relevant' after the deadline for serving Invalidity Contentions had passed" based upon Plaintiff's August 2011 submissions to the USPTO "is incorrect and contradicted by [Defendant's]

22

own statements in the reexamination proceedings". *Id.* Specifically, "when it submitted the Frojd

publication to the USPTO", Plaintiff maintains that Defendant informed the Patent Examiner that

> [t]he Frojd patent is being used to rebut the Patentee's arguments that image/frame overlap is a separate concept from imaging sensor position overlap, and that imaging sensor position would not have been obvious to one of ordinary skill in the art.

*Id.* at 2-3. Separately, when it submitted "the Rika publication", Defendant stated that

> [t]he Rika reference is being used to rebut the Patentee's arguments that 'automatically' obtaining 'maximal focus' was [sic, not] within the skill in the art.

*Id.* at 3. Thus, Plaintiff contends that "by its own admission to the USPTO, [Defendant] submitted

these additional references not in connection with any dispute over the meaning of claim terms but

in response to [Plaintiff's] identification of claim features which were absent from the references

submitted by [Defendant] in the first instance". *Id.*

However, even if the Court accepts Defendant's representation about relevance, Plaintiff

argues that Defendant's request for leave to supplement is untimely. *Id.* Defendant "submitted the

Frojd and Rika references along with claim charts and corresponding Invalidity Contentions to the

USPTO on September 24, 2011" but "waited more than three months to seek...leave to amend its

contentions in this case". *Id.* Plaintiff maintains that Defendant's "request to infuse new theories

of invalidity some twenty-one months after it formed its opinion that the patents-in-suit are invalid,

thirteen months after it gave actual notice to [Plaintiff] of those opinions, six months after its

Invalidity Contentions were due, and three months after it submitted its new theories to the USPTO

in writing does not remotely approach the 'timely application' requirement" of L. Pat. R. 3.7. *Id.*

**(b)      Defendant has failed to identify any purpose for its supplement, much less good cause.**

Plaintiff contends that Defendant's "proposed supplementation would serve no purpose other than to waste time and resources" given that Defendant "will be precluded by statute from pursuing any invalidity challenge in this case based on the references it is now asking...[the Court's] permission to add to its contentions". *Id.* Citing 35 U.S.C. § 315(c) and given that the USPTO "has already issued its section 1313 orders on [Defendant's] requests for reexamination of the patents-in-suit", Plaintiff maintains that Defendant "will be estopped from asserting invalidity in this litigation based on any of the prior art which it already relied upon in the reexamination proceeding" – including "the additional Rika and Frojd publications which [Defendant] now seeks to add to this litigation" – for "any asserted claim that the USPTO confirms to be patentable". *Id.* at 3-4. "Conversely, for any claim which the USPTO might cancel at the conclusion of its reexamination, [Defendant's] invalidity contentions will be moot". *Id.* at 4. Plaintiff argues that Defendant's "assertion in its letter that including the same prior art in its Invalidity Contentions that it already submitted in the pending reexamination proceedings is somehow 'in the interests of justice' is irresponsibly incorrect...and plainly far short of the good cause showing required by...L. Pat. R. 3.7". *Id.*

### C.   **Supplemental Briefing**

#### 1.   **Plaintiff's Supplemental Argument**

##### (a)   **Given that the USPTO has issued ACPs for the '022 and '763 patents, there is a high probability that confirmed asserted claims will survive reexamination without amendment.**

Plaintiff contends that in the ACP related to the '022 patent, "the USPTO Examiner explained why none of the references submitted by [Defendant], including Rika, renders the asserted '022 patent claims unpatentable" and "confirm[ed] the patentability of each asserted and amended

claim in that patent". *See* Pl.'s Letter dated March 2, 2012 at 1. Similarly, Plaintiff contends that in the ACP related to the '763 patent, "the USPTO Examiner again explained why none of the references submitted by [Defendant], including both Rika and Frojd, renders the claim unpatentable" and "confirm[ed] the patentability of one of the asserted and unamended claims in that patent". *Id.* Noting that it has "one month from the date of each ACP to submit comments" and that Defendant "would have thirty days to submit a response" only if Plaintiff chooses to submit comments, Plaintiff cites 37 C.F.R. § 1.953(c) and asserts that "[a]fter [the] comment period expires...the USPTO will issue a Right of Appeal Notice in each case". *Id.* at 2. "If no appeal is taken, the USPTO will issue a reexamination certificate in accordance with the Examiner's findings" and thereafter, pursuant to 35 U.S.C. § 315(c), Plaintiff maintains that "a third-party requester of the reexamination is estopped from asserting invalidity in litigation based upon any ground which was raised or which could have been raised in the reexamination proceeding". *Id.* Here, given that Defendant "based its argument for a stay in part on its contention that the Examiner's initial decision rejecting [Plaintiff's] patent claims created a 'high probability' that the USPTO ultimately [would] decide that they [were] invalid", Plaintiff argues that because "the Examiner has confirmed asserted claims as patentable in the ACPs, there is an even higher probability that these claims will survive reexamination without amendment". *Id.* Citing *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F.Supp. 2d 755, 763 (S.D. Tex. 2010), Plaintiff maintains that the findings in the ACPs "evidence[s] the prejudice...[that will accrue to Plaintiff] if the case is stayed". *Id.* As such, Plaintiff argues that "[t]he circumstances of this case do not warrant a stay". *Id.* at 4.

> **(b)** **Assuming the USPTO rejects the prior art references by Defendant in the pending reexamination proceedings, VAK should be estopped from asserting the same invalidity contentions**

**in this litigation.**

Plaintiff notes that VAK filed is Answer on January 31, 2012, therein "including counterclaims that each of the patents-in-suit is invalid based upon the same prior art that the USPTO...[is] consider[ing] in the pending reexamination proceedings". *Id.* Citing *Antor Media Corp. v. Nokia, Inc.*, 2006 U.S. Dist. LEXIS 96777, at *20 (E.D. Tex. 2006), Plaintiff maintains that the tactic utilized by Defendants "is transparent": "[if] they lose in reexamination on arguments presented there under the identity of [VAI], they will attempt a second bite at the apple by pursuing the same invalidity contentions in this case under the identity of [VAK]". *Id.* at 2-3. However, "[e]ven where co-defendants are unrelated and the reexaminations are *ex parte*, other courts have attempted to avert that injustice by requiring each defendant to stipulate that it will not challenge validity in litigation based on any prior art that was considered during the reexamination". *Id.* at 3. Citing *LMT Mercer Group, Inc. v. Maine Ornamental, LLC*, 2011 U.S. Dist. LEXIS 55549, at *36 (D.N.J. 2011), Plaintiff argues that "[t]he facts here are even stronger in favor of imposing such a stipulation" given that "Defendants admittedly are related companies" and given that "the pending reexaminations are *inter partes*". *Id.* Further, Plaintiff notes that VAI and VAK "have been represented by the same counsel in this case since well before either of the patent reexaminations was requested", that Plaintiff's "infringement contentions identify the same accused products for both [VAI and VAK]", that VAI and VAK's "interests involved in this case and in the reexaminations are identical", and that "both reexaminations were requested by an attorney at the same firm that represents both [VAI and VAK] in this case". *Id.*

Plaintiff argues that "[i]t would be highly prejudicial and unfair for [VAK] to affirmatively rely upon the reexamination requests and proceedings as a basis for its allegation that its

infringement was not willful and simultaneously divorce itself from those same proceedings so as to avoid the estoppel effect of a final determination of patentability by the USPTO". *Id.* at 4.  In fact, "[e]ven [VAI's] motion to stay argues that '*inter partes* reexamination has certain estoppel effects against the litigants'".  *Id.*  "Irrespective of whether the case is stayed, [VAK] should be recognized as a real party in interest in the requests for reexamination of the patents-in-suit...and subject to the same estoppel consequences as [VAI]".  *Id.*  Plaintiff claims that "[w]ithout that check in place, the pending inter partes reexaminations would serve no purpose other than to permit...[Defendants] to unfairly hedge their bets against unfavorable results in the USPTO by retaining the unfettered future opportunity to raise the same contentions in this Court".  *Id.*

### 2.    Defendant's Supplemental Argument

#### (a)    A stay is proper until the reexamination proceedings are final.

Defendant notes that "[a] detailed background on the reexamination proceedings was set forth in [its] briefing in support of...[the Motion]...as well as [its] more recently filed factual update ...".  *Id.* at 3.  Defendant also notes that in this litigation, Plaintiff's Infringement Contentions include "claims 1-2, 4, 6, 17-18, and 21 of the '763 patent and claims 17 and 25 of the '022 patent".  *Id.*

### I.    The ACPs are interim orders which do not complete reexamination.

Defendant claims that the USPTO's ACPs, issued pursuant to 37 C.F.R. § 1.949, "continued...[the examiner's] rejection of the majority of the patents' claims but confirmed others".  *Id.*  Specifically, "the examiner preliminarily confirmed claims 17 and 25 of the '022 patent and claim 21 of the '763 patent" while finding that "claims 1 and 3-15 of the '022 patent and claims 1-19 of the '763 patent should be rejected...as the same are invalid as anticipated (35 U.S.C. § 102) in

light of the cited prior art". *Id.* Thus, "six of the nine claims asserted by Plaintiff in this litigation stand rejected". *Id.* Moreover, Defendant maintains that "[t]his is not the end of either reexamination proceeding" based upon the comment period set forth at 39 C.F.R. § 1.951 and the fact that "Plaintiff may still include a proposed amendment to the claims to salvage them from an ultimate rejection". *Id.* Thereafter, pursuant to 39, C.F.R. § 1.953 and MPEP § 2601.01, "the examiner may either reopen prosecution and issue another Office action on the merits or issue a Right of Appeal Notice". *Id.* Finally, "there is the possibility of successive proceedings before the Patent Trial and Appeal Board ("Board") prior to issuance of any final decision". *Id.* Based on the above, Defendant argues that the ACPs are "interim in nature...and do not complete the reexamination process for either the '763 or '022 patents". *Id.*

As set forth more fully in Defendant's earlier arguments, Defendant reiterates that "a stay pending reexamination of the patents-in-suit provides significant advantages in savings of costs and time for the parties and the Court, including the simplification of issues and the creation of an admissible record at trial of the [US]PTO proceedings". *Id.* at 4. Citing *LG Electronics USA v. Whirlpool Corporation*, 2011 WL 5599718, at *1 (D.N.J. 2011), *Eberle III v. Harris*, 2005 WL 6192865, at *1 (D.N.J. 2005), and *ICI Uniqema, Inc. v. Kobo Prod., Inc.*, 2009 WL 4034829 (D.N.J. 2009), Defendant contends that "the fact that some claims have been confirmed...but others have not...does not militate against a stay". *Id.* Further, Defendant argues that "Plaintiff's suggestion that the confirmation of certain claims in the interim orders somehow changes the Court's analysis relative to the pending motion to stay" and reliance on *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 763 (S.D. Tex. 2010) are both wrong and inapposite. *Id.* "Unlike *Tesco*", a case where the court "found prejudice based on the fact that the parties...were direct competitors", in this

case "Plaintiff has admitted that it is not a direct competitor to [Defendant]..., eliminating any...prejudice any making this case more like LG Electronics". *Id.* Defendant claims that "Plaintiff all but concedes that a stay here is proper" in its supplemental briefing and that "[t]he majority of [its] letter is nothing more than a last-ditch effort to impose some vague and undefined condition on [VAK] with respect to an alternate order staying this litigation", therein providing "no real basis for such a condition in this case" and failing to "describe what such a condition could possibly contain". *Id.*

Defendant asserts that "Plaintiff's suggestion that any defendant in this action is looking for 'two bites' at the apple rings hollow" given that VAI "filed both its motion to stay and its request for leave to supplement its Invalidity Contentions while [VAK's] motion to dismiss...was pending". *Id.* at 4-5. "Whatever estoppel effect the inter partes reexamination proceeding may or may not have on the parties should not be the subject of a last-ditch request for a condition and stay" and "[a]ny impact of the reexamination proceedings should be analyzed at their conclusion...". *Id.* at 5. In sum, Defendant argues that "the majority of the claims asserted by Plaintiff stand rejected by the [US]PTO" and Plaintiff "admits that there are additional proceedings before the examiner (and potentially the Board) in both reexaminations". *Id.* "Under [these] circumstances", Defendant maintains that "a stay pending finality of the reexamination process is appropriate and will without question promote judicial economy". *Id.*

> ii.    **The Examiner's decision to confirm claims is based upon an improper procedural objection.**

Defendant claims that "the assigned examiner did not fully evaluate the validity of the claims of the '022 and '763 patents" in its interim orders by "refus[ing] to review the patents' claims for

obviousness under 35 U.S.C. § 103 as submitted by [Defendant]", therein stating that Defendant "failed to provide enough specifics in its petition for reexamination to show why one skilled in the art would have combined the cited prior art references and § 103 to show invalidity by obviousness". *Id.* Defendant notes that the examiner made this finding while "explicitly agree[ing] with [Defendant] that 'the prior art references disclose the claim limitations'", suggesting that Defendant "somehow 'waived' its right to provide a rationale for combination of these references in its initial papers". *Id.* "The examiner's decision is not only incorrect, but an improper procedural decision that contradicts the Manual of Patent Examining Procedure ("MPEP")" because "[i]f the examiner perceived that [Defendant] had failed to provide sufficient rationale to combine references for purposes of an obviousness review", pursuant to MPEP §§ 2617, 2627 "the examiner was required to provide [Defendant] a 'Notice of Deficiency' and allow it...[the opportunity] to cure the purported deficiency". *Id.* Defendant maintains that in this instance, "[n]o notice of deficiency issued"; nevertheless, Defendant "provided explanation for combination of the cited references in its Supplemental Comments...which the examiner apparently disregarded". *Id.* Citing *Mars, Inc. v. H.J. HJ Heinz Co., LP*, 377 F.3d 1369 (Fed. Cir. 2004), Defendant argues that "this [was] a clear violation of the procedural rules outlined in the MPEP which the examiner must follow" and "will likely lead to the reopening of the reexamination of the three erroneously confirmed claims of the patent-in-suit at issue". *Id.* Defendant is "confident that once its arguments are fully considered, the remaining claims will ultimately be rejected". *Id.*

> **(b)      Defendant's request to supplement its Invalidity Contentions is unaffected by the USPTO's interim orders.**

Defendant claims that it "has met its requirement of showing good cause to supplement its

[Invalidity] Contentions" and that this "request...[does] not in any way relate to the interim order[s]...[issued] by the examiner". *Id.* at 6. Defendant maintains that Plaintiff's "argument regarding estoppel cannot change the fact that [Defendant] has met its requirement of showing good cause" because "whether any ultimate estoppel might be afforded under 35 U.S.C. § 315(c) has nothing to do...with [Defendant's] Invalidity Contentions or the interim orders". *Id.* Citing *Bettcher Indus. v. Bunzl USA*, 661 F.3d 629, 649 (Fed. Cir. 2011), Defendant contends that "whatever estoppel effect might be afforded cannot take effect as a matter of law until the reexamination proceedings reach their conclusion". *Id.* "If this suit is stayed pending reexamination, [Defendant's] request to supplement its Invalidity Contentions may become moot (either based on the noted estoppel provision or the [US]PTO's final confirmation of its first Office Action cancelling all claims of the patents-in-suit)". *Id.* However, "[u]nless there is a stay pending reexamination, ...the validity positions will be at issue before this Court and the [US]PTO at the same time" such that "[i]f the same prior art is not put at issue in both proceedings, it risks the possibility of inconsistent decision on validity". *Id.* Citing *LMT Mercer Group, Inc. v. Maine Ornamental, LLC*, 2011 WL 2039064, at *2 (D.N.J. 2011), Defendant notes that in other cases "this Court has confirmed that there is significant prejudice to a defendant where a patent found invalid by the [US]PTO nevertheless is found valid in parallel litigation". *Id.* Based on the above, Defendant argues that "[t]here is simply no impact whatsoever of the [US]PTO's interim orders on [Defendant's] request to supplement its Invalidity Contentions". *Id.*

## III.  DISCUSSION

### A.  Legal Standards

#### 1.  Stay Proceedings

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)(*citing Kansas City Southern Ry. Co. v. U.S.*, 282 U.S. 760, 763 (1931); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935)).  "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 256.  Unquestionably, "a United States district court has broad power to stay proceedings." *Bechtel Corp. v. Laborers' International Union*, 544 F.2d 1207, 1215 (3d. Cir. 1976).  "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Id.*; *see also American Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937).  However, "it is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity', if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Mansville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983)(*citing Landis v. North American Co.*, 299 U.S. 248, 255 (1936)).

With respect to patent cases, courts have "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent". *P&G v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988).  However, "a stay should ordinarily not be granted unless there is a substantial patentability

32

issue raised" and "both a preliminary injunction and a stay ordinarily should not be granted at the same time" because this "could subject an accused infringer to unfair and undesirable delay in reaching a final resolution".  *P&G*, 549 F.3d at 849; *see also Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

"A district court is not required to stay a proceeding pending reexamination", although "one purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is cancelled) or to facilitate trial of that issue by providing the district court with the expert view of the [US]PTO (when a claim survives reexamination proceedings)".  *Cross Atl. Capital Partners., Inc. v. Facebook, Inc.*, 2008 U.S. Dist. LEXIS 62869, at *2 (E.D. Pa. 2008); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).  "[G]ranting a stay is favored" and is "particularly appropriate when the reexamination result might assist the court in making a validity determination or would eliminate the need to make an infringement determination".  *Id*. at *2-3; *see also Alltech, Inc. v. Cenzone Tech, Inc.*, 2007 U.S. Dist. LEXIS 19989 (S.D. Cal. 2007); *ASCII Corp v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *In re Cygnus Telecomm. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005).  In fact, "[a]lthough every case is fact specific, almost every reported New Jersey District Court opinion that has considered the issue has granted a stay where a reexamination request was pending".  *Brass Smith, LLC v. RPI Indus.*, 2010 U.S. Dist. LEXIS 116063, at *19-20 (D.N.J. 2010).

However, "litigation and reexamination are not mutually exclusive alternatives for the parties to test the validity of a patent – they may be concurrent proceedings".  *BarTex Research v. FedEx Corp.*, 611 F. Supp. 2d 647, 650 (E.D. Tex. 2009); *see also Ethicon*, 849 F.2d 1422, 1427-28. District courts are "under no obligation to delay [their] own proceedings by yielding to ongoing

[US]PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze". *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. 2007). Adoption of a "*per se* rule that patent cases should be stayed during reexamination...would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination". *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 663 (E.D. Tex. 2005).

"Courts have enumerated many advantages with respect to staying a civil action pending [US]PTO reexamination of a patent, which include: (1) a review of all prior art presented to a court by the [US]PTO, with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by [US]PTO examination; (3) the potential dismissal of a civil action should invalidity of a patent be found by the [US]PTO; (4) encouragement to settle based upon the outcome of the [US]PTO reexamination; (5) an admissible record at trial from the [US]PTO proceedings which would reduce the complexity of the litigation; (6) a reduction of issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court". *ICI Uniqema, Inc. v. Kobo Prods., Inc.*, 2009 U.S. Dist. LEXIS 108421, at *3 (D.N.J. 2009); *see also Eberle v. Harris*, 2005 U.S. Dist. LEXIS 31885 (D.N.J. 2005); *GPAC, Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992). "District courts have listed the following factors to determine whether a stay is appropriate: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set". *Cross Atl.*, 2008 U.S. Dist. LEXIS 62869, at *3-4; *see also In re Laughlin Prods. Inc.*, 265 F. Supp. 2d 525, 530-31 (E.D. Pa. 2003); *Sabert Corp. v. Waddington North Am., Inc.*, 2007 U.S. Dist. LEXIS 68092

(D.N.J. 2007); *Alltech*, 2007 U.S. Dist. LEXIS 19989; *Cygnus*, 385 F. Supp. 2d at 1023; *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *ASCII*, 844 F. Supp. at 1380; *GPAC*, 144 F.R.D. at 66; *ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *4.

The Court also notes that pursuant to 35 U.S.C. § 317(b),

> Once a final decision has been entered against a party in a civil action arising in whole or in part under section 1338 of title 28, that the party has not sustained its burden of proving the invalidity of any patent claim in suit or if a final decision in an *inter partes* reexamination proceeding instituted by a third-party requester is favorable to the patentability of any original or proposed amended or new claim of the patent, then neither that party nor its privies may thereafter request an *inter partes* reexamination of any such patent claim on the basis of issues which that party or its privies raised or could have raised in such civil action or *inter partes* reexamination proceeding, and an *inter partes* reexamination requested by that party or its privies on the basis of such issues may not thereafter be maintained by the Office, notwithstanding any other provision of this chapter.  This subsection does not prevent the assertion of invalidity based on newly discovered prior art unavailable to the third-party requester and the Patent and Trademark Office at the time of the *inter partes* reexamination proceedings.

### 2.       Amending Invalidity Contentions

Pursuant to L. Pat. R. 3.7,

> [a]mendment of any contentions, disclosures, or other documents required to be filed or exchanged pursuant to these Local Patent Rules may be made only by order of the Court upon a timely application and showing of good cause.   The application shall disclose whether parties consent or object.  Nonexhaustive examples of circumstances that may, absent undue prejudice to the adverse party, support a finding of good cause include:
>> (a) a claim construction by the Court different from that proposed by the party seeking amendment;
>> (b) recent discovery of material prior art despite earlier diligent search;
>> (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite

35

> diligent efforts, before the service of the Infringement
> Contention;
> (d) disclosure of an infringement contention by a Hatch-
> Waxman Act party asserting infringement under L. PAT. R.
> 3.6(g) that requires response by the adverse party because it
> was not previously presented or reasonably anticipated; and
> (e) consent by the parties in interest to the amendment and a
> showing that it will not lead to an enlargement of time or
> impact other scheduled deadlines.
> The duty to supplement discovery responses under FED. R. CIV. P.
> 26(e) does not excuse the need to obtain leave of Court to amend
> contentions, disclosure, or other documents required to be filed or
> exchanged pursuant to these Local Patent Rules.

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with

adequate notice and information with which to litigate their cases." *Computer Acceleration Corp.*

*v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007); *see also IXYS Corp. v. Advanced*

*Power Tech., Inc.*, 2004 U.S. Dist. LEXIS 10934 (N.D. Cal. 2004); *STMicroelectronics, Inc. v.*

*Motorola, Inc.*, 307 F. Supp. 2d 845, 849 (E.D. Tex. 2004).  "The rules are designed to require

parties to crystallize their theories of the case early in the litigation and to adhere to those theories

once they have been disclosed." *Atmel Corp. v. Information Storage Devices, Inc.*, 1998 WL

775115, at *2 (N.D. Cal. 1998).  Furthermore, courts  have recognized that "[t]he party seeking to

amend its contentions bears the burden of establishing diligence" (*Streak Prods., Inc. v. Antec, Inc.*,

2010 U.S. Dist. LEXIS 97613, at *5-6 (N.D. Cal. 2010)) and have considered the following factors

in determining whether good cause exists to grant leave to supplement invalidity contentions:

> (1) the reason for the delay and whether a party has been diligent;
> (2) the importance of what is to be excluded;
> (3) the danger of unfair prejudice; and
> (4) the availability of a continuance and the potential impact of a
> delay on judicial proceedings.

*See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 U.S. Dist. LEXIS 1644, at *8 (E.D. Tex.

36

2009); *see also Streak Prods., Inc. v. Antec, Inc.*, 2010 U.S. Dist. LEXIS 97613, at *5-6 (N.D. Cal. 2010); *Sybase, Inc. v. Vertica Sys.*, 2009 U.S. Dist. LEXIS 110775, at *3-4 (E.D. Tex. 2009); *Computer Acceleration*, 503 F. Supp. 2d at 822; *Garmin Ltd. v. TomTom, Inc.*, 2007 U.S. Dist. LEXIS 74032 (E.D. Tex. 2007). Rule 3.7 "is not a straitjacket into which litigants are locked from the moment their contentions are served," but instead, "a modest degree of flexibility [exists], at least near the outset." *Comcast Cable Communications Corp., LLC v. Finisar Corp.*, 2007 WL 716131, at *2 (N.D. Cal. 2007). Therefore, while the Local Patent Rules strive to have a party establish their contentions early on, it is important to recognize that "preliminary...contentions are still preliminary". *General Atomics v. Axis-Shield ASA*, 2006 WL 2329464, at *2 (N.D.Cal. Aug. 9, 2006).

## B. Defendant's Motion to Stay and Application to Serve Supplemental Invalidity Contentions

With respect to Defendant's Motion, the Court finds that advancing this litigation while *inter partes* reexamination is pending before the USPTO may be an exercise in futility. Although the Court acknowledges that ACPs have been issued by the USPTO with respect to the patents-in-suit pursuant to 37 C.F.R. § 1.949,[1] to date the USPTO has not issued a Right of Appeal Notice[2] or reopened prosecution[3] pursuant to 37 C.F.R. § 1.953. If a Right of Appeal Notice is issued, the

---

[1] Plaintiff's Infringement Contentions include claims 17 and 25 of the '022 patent and claims 1-2, 4, 6, 17-18, and 21 of the '763 patent. While confirming claims 17 and 25 of the '022 patent and claim 21 of the '763 patent, the Court notes that the ACPs also rejected claims 1, 3-15 of the '022 patent and claims 1-19 of the '763 patent.

[2] Pursuant to 37 C.F.R. § 1.953(c), "[t]he Right of Appeal Notice [is] a final action, which compromises a final rejection setting forth each ground of rejection and/or final decision favorable to patentability including each determination not to make a proposed rejection, an identification of the status of each claim, and the reasons for decisions favorable to patentability and/or the grounds of rejection for each claim".

[3] Pursuant to 37 C.F.R. § 1.953(a), "[u]pon considering the comments of the patent owner and the third party requester subject to the Office action closing prosecuting in an *inter partes* reexamination, or upon expiration of the time for submitting such comments, the examiner shall issue a Right of Appeal Notice, unless the examiner

parties will have one (1) month to appeal; if no notice of appeal is filed, "prosecution in the *inter partes* reexamination proceeding will be terminated, and the Director will proceed to issue an publish a certificate under § 1.997 in accordance with the Right of Appeal Notice". 37 C.F.R. § 1.953. If prosecution is reopened, reexamination proceeds as before without a firm timeline for completion. In either case, the Court notes that the ACPs are interim orders which may or may not provide an indication of the final outcome of the pending reexamination. Ultimately, if claims 1-27 of the '022 patent and claims 1-29 of the '763 patent are wholly invalidated – a prospect that seems unlikely at this time given the existing findings confirming claims 17 and 25 of the '022 patent and claims 21 of the '763 patent as set forth in the ACPs – the basis for this lawsuit may be moot and the case dismissed. However, even if claims 1, 3-15 of the '022 patent and claims 1-19 of the '763 patent are the only claims invalidated, significant aspects of this litigation may be altered. As such, the Court agrees with the reasoning set forth in *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 5599718, at *1 (D.N.J. 2011):

> The [US]PTO has rejected...[most] of the asserted claims...offered by...[plaintiff] for...[one of the two] patents-in-suit. The reexamination procedures have served their purpose in that they have simplified the issues of validity. Accordingly, the interests of justice are best served by allowing the inter partes reexaminations to continue and staying the district court proceedings in order to promote judicial economy.

*See also Eberle v. Harris*, 2005 WL 6192865 (D.N.J. 2005).

Further, with respect to the factors used to determine the appropriateness of a stay, the Court finds that they also weigh in Defendant's favor. While the Court appreciates that a stay will delay these proceedings, delay alone is not a sufficient reason to deny a stay. *See Stryker Trauma S.A. v.*

---

reopens prosecution and issues another Office action on the merits".

38

*Synthes*, 2008 U.S. Dist. LEXIS 23955 (D.N.J. 2008); *see also Sorensen v. Black and Decker Corp.*, 2007 U.S. Dist. LEXIS 66712 (S.D. Cal. 2007).  Similarly, while the Court appreciates Plaintiff's contention that Defendant is a competitor which may continue selling infringing goods and eroding market share and goodwill during a stay (*see* Pl.'s Opp'n Br. at 10-11), Plaintiff did not seek a preliminary injunction in this matter and the Court declines Plaintiff's suggestion to impose any type of restraint on Defendant's business activities at this time.  *See WABCO Holdings, Inc. v. Bendix Commer. Vehicle Sys.*, 2010 U.S. Dist. LEXIS 64036, at *8-9 (D.N.J. 2010).  Importantly, the Court notes that all of Plaintiff's legal and equitable remedies will be available when the stay is lifted; a stay does not foreclose Plaintiff from any remedy.  Given the fact that this case is still in the early stages of discovery, a *Markman* hearing has not been scheduled, and no trial date has been set, the USPTO's ACPs rejecting some claims – while confirming others – of the patents-in-suit, and the factors cited with respect to the advantages of granting a stay while the USPTO completes a reexamination (*see ICI Uniqema*, 2009 U.S. Dist. LEXIS 108421, at *3), the Court also finds that a stay may ultimately simplify the issues in question and the trial of this case.  As set forth in *Sorensen*, 2007 U.S. Dist. LEXIS 66712, at *18-19, if the USPTO ultimately does not invalidate or otherwise alter all of the claims of the patents-in-suit, Plaintiff's legal remedies remain unaffected. If the claims of the patents-in-suit are ultimately narrowed, the parties will have benefitted by avoiding the needless waste of resources before this Court and Plaintiff will be able to pursue its claim for monetary damages at trial with respect to any remaining valid claims.  If the claims of the patents-in-suit are ultimately confirmed, Plaintiff's position may be strengthened and its likelihood of recovering monetary damages may increase.

Further, based upon the fact that "the Federal Circuit has recently confirmed that the

[US]PTO would not be bound in its reexamination by the determinations of [a district court]",

> not only is plaintiff unlikely to be prejudiced in these proceedings by a stay pending the [US]PTO reexamination, but defendants would potentially be prejudiced by failing to enter a stay... .  Not only could the court and the [US]PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to defendant: if this court finds that the patent is not invalid and the defendant has infringed it, and orders defendant to pay damages to plaintiff for such infringement, then defendant would have no ability to recover those damages if at a later date the [US]PTO determined that the patent is invalid.

*Sorensen*, 2007 U.S. Dist. LEXIS 66712, at *15; *see also Bausch & Lomb, Inc. v. Alcon Lab.*, Inc., 914 F. Supp. 951, 952 (W.D.N.Y. 1996).  As a result, while the Court appreciates that the Complaint in this case was filed on September 23, 2010 and that the parties have engaged in motion practice and the initial stages of discovery, and based on the fact that a final USPTO decision will be beneficial to the Court by either declaring some/all of the patents-in-suit "unpatentable...[and thereby] eliminating the need for...[a] trial" or by finding some/all of the "claims to be valid...[and thereby] aid[ing] the Court when considering the claims during litigation", the Court finds that failing to grant a stay at this time may in fact prolong, rather than expedite, resolution of this litigation.  At this time, the Court also declines to prospectively limit VAI or VAK's ability to challenge the validity of the patents-in-suit based upon prior art cited in the pending inter partes reexamination.  *Id.*; *see also GPAC*, 144 F.R.D. at 65-66; *Gould*, 705 F.2d at 1342.

With respect to Defendant's application to serve Supplemental Invalidity Contentions, although the Court notes that the application itself comes approximately five (5) months after Plaintiff's submissions to the USPTO[4], the Court finds that permitting Defendant to serve

---

[4] The Court notes that Plaintiff's August 2011 submissions to the USPTO are the purported impetus for Defendant's application to serve supplemental Invalidity Contentions.  *See* Def.'s Letter dated January 12, 2012 at 2.

supplemental Invalidity Contentions at this time will not unduly prejudice Plaintiff given that Defendant presented the USPTO examiner and Plaintiff with the same additional prior art references in September 2011 (*see* Def.'s Letter dated January 12, 2012 at 2-3; *see also* Def.'s Reply Letter dated February 3, 2012 at 3), given that VAK's recently filed Answer "asserted invalidity of the [patents-in-suit] on all art in the reexamination proceeding including the proposed supplemental prior art" (Def.'s Reply Letter dated February 3, 2012 at 1), and given the imposition of a stay as set forth above.  While noting that the parties may incur additional legal expenses, the Court does not believe that to be unduly burdensome or that significant additional resources will be expended so as to unfairly prejudice Plaintiff.   The Court also finds that, if permitted, Defendant's proposed amendments will not significantly delay the resolution of this matter.  Fact discovery has yet to be completed and, although *Markman* briefs have been submitted, no hearing has been scheduled such that any additional discovery and/or revisions to *Markman* briefs may proceed when the stay is lifted. The Court finds that Defendant has demonstrated that it was sufficiently diligent in seeking to supplement it original Invalidity Contentions and concludes that allowing the proposed amendments at this point in the litigation will not cause any significant delay or prejudice to Plaintiff.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 29th day of March, 2012,

**ORDERED** that Defendant's Motion to stay this matter pending completion of the USPTO's *inter partes* reexamination of the '763 and '022 patents [dkt. entry. no. 53] is **GRANTED**; and it is further

**ORDERED** that defense counsel shall provide the Court with status updates regarding the USPTO's *inter partes* reexamination of the '763 and '022 patents every ninety (90) days starting **May 1, 2012**; and it is further

**ORDERED** that defense counsel shall notify the Court within ten (10) days of any final disposition of the USPTO's *inter partes* reexamination of the '763 and '022 patents; and it is further

**ORDERED** that Defendant's application to serve supplemental Invalidity Contentions is **GRANTED**; and it is further

**ORDERED** that Defendant shall serve its supplemental Invalidity Contentions, to the extent it has not already done so, by **April 6, 2012**.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**